HICKSON LUMBER COMPANY ET AL. v. GAY LUMBER COMPANY.

(Filed 17 March, 1909.)

1. **Mortgagor and Mortgagee—After-acquired Property—Terms Sufficient—Property Embraced.**

   Subsequently acquired property will be construed as subject to the lien given by mortgage, when the mortgage so states in express terms, or it clearly appears from the language used that such was the manifest intention of the parties; and the expression, "all the property, real, personal or mixed, wheresoever the same is situated, now owned (by the grantor) or shall be owned during the continuance of the liability hereinafter mentioned," is sufficient, when identified, to bring after-acquired property within the terms of the instrument.

2. **Mortgagor and Mortgagee—After-acquired Property—Equity—Validity of Mortgage.**

   A mortgage of after-acquired property, whether real or personal, will be enforced by a court of equity, without reference to whether the mortgage is by a railroad corporation.

3. **Mortgagor and Mortgagee—Equal Equities—Common Law.**

    The after-acquired property clause of a mortgage will not be enforced against subsequent purchasers for value and without notice.

4. **Mortgagor and Mortgagee—After-acquired Property—Registration—Notice—Equities.**

    One who loans money to the mortgagor for the subsequent purchase of property falling within the terms and description of a prior registered mortgage of after-acquired property takes with notice of the mortgagee's equities therein, and no equity is raised to defeat the rights under the prior registered mortgage.

5. **Same—Purchase—Money Loaned—Equities.**

    When one purchases land with money advanced by another, without giving at the time a sufficient conveyance to create a lien thereon, and the lands so purchased come within the terms and description of his prior registered mortgage on after-acquired property, the lien of the mortgage attaches and is prior to that of a registered mortgage on the land subsequently given by the mortgagor to the one advancing the money.

ACTION heard by *Neal, J.,* at June Term, 1908, of LENOIR.

This is a proceeding instituted in the Superior Court of Lenoir County to wind up the affairs of the defendant, the Gay Lumber Company, to which the creditors of said corporation are parties. The cause was referred to a referee, who made his report, to which exceptions were filed by certain creditors whose interests are affected by his rulings. A final decree was entered by his Honor, *Judge Neal,* at June Term, 1908, of the Superior Court of Lenoir County, passing on the exceptions and adjudicating the rights of the parties. This appeal is by the Hickson Lumber Company, which claims a lien upon certain lands and property of the Gay Lumber Company, which, it insists, has precedence over the mortgage made to James H. Pou, securing debts to his wife, Annie W., and to the Commercial and Farmers Bank.

The facts are stated in the opinion of the Court.

*Rountree & Carr* for appellants.
*Aycock & Winston* and *Womack & Pace* for Annie W. Pou.

BROWN, J. The controversy presented by this appeal is clearly stated in the brief of the learned counsel for appellants, in these

words: "The only question which we desire to present on this appeal is whether the mortgage to James H. Pou covers the property specifically described in the mortgage to the Hickson Lumber Company by virtue of the following language contained in the Pou mortgage: 'also all the property, real, personal, or mixed, wheresoever the same is situated, now owned by the Gay Lumber Company or shall be owned during the continuance of the liability hereinafter mentioned.' We insist that it does not." The Pou mortgage was executed 24 February, 1903, and duly recorded 6 March, 1903. The Hickson mortgage was executed 24 September, 1903, recorded 16 October, 1903, and embraces five tracts of land, therein described, and one locomotive, all of which property was acquired by the Gay Lumber Company after the Pou mortgage was recorded. The several tracts of land were conveyed by deeds to the Gay Lumber Company, by the grantors therein named, some little time before the execution of the Hickson mortgage and after the recording of the Pou mortgage. Upon the hearing the Hickson Lumber Company offered to prove that the tracts of timber described in the mortgage, and which were acquired subsequently to the execution of the mortgage executed to James H. Pou, were purchased with funds advanced for the purpose by the said Hickson Lumber Company. This evidence was excluded, and the appellant excepted.

For the purposes of this appeal, we will consider the fact offered to be proven as established.

The questions to be considered are:

First, the sufficiency of the terms of the Pou mortgage to embrace after-acquired property.

Second, the validity of a mortgage which undertakes to bind after-acquired property.

Third, whether or not the fact that the Hickson Lumber Company furnished money to the Gay Lumber Company, which money was used by the latter company in the purchase of these lands, gives the lumber company a priority over the lien of the Pou mortgage.

1. Although the after-acquired property clause in the Pou mortgage might have been expressed with greater fullness of language, nevertheless there is manifested an undoubted intention upon the part of the mortgagor to bring within the lien of

the instrument all property, both real and personal, which the mortgagor shall acquire at any time after the execution of the mortgage and during the continuance of the liability created by it. From its very nature, such a clause cannot usually describe with accuracy the property the mortgagor will thereafter acquire, for that is unknown. But upon the principle of *"Id certum est quod certum reddi potest,"* the after-acquired property may be easily identified and brought within the terms of the instrument.

The substance of the authorities is to the effect that when the mortgage is intended to cover subsequently acquired property, either express terms should be used to that end or else it must clearly appear from the language of the deed that such was the manifest intention of the parties. *Holroyd v. Marshall,* 10 H. L. Cases, 191; *Railroad v. Hamilton,* 134 U. S., 296; *Hammock v. Trust Co.,* 105 U. S., 77; *Maxwell v. Dental Association,* 77 Fed. Rep., 938; *Parker v. Railroad,* 33 Fed. Rep., 693.

In *Railroad v. Hamilton, supra,* the mortgage included real and personal property "now or at any time hereafter owned or acquired" by the mortgagor. Similar terms are used in other mortgages, which have been sustained by the courts as sufficient to cover after-acquired property, as, for instance, "or which may be acquired during the existence of this security"; "then owned or subsequently acquired"; "which is now owned or shall hereafter be acquired"; "now held or hereafter to be acquired." *Hammock v. Trust Co., supra; Parker v. Railroad, supra; Railroad v. Woeltper,* 64 Pa. St., 366.

In *Maxwell v. Dental Co., supra,* it is said: "It may not be necessary to describe specifically the future property which it is intended the mortgage shall cover, but it is essential that the mortgage shall show that it is intended to apply to after-acquired property of the mortgagor."

The unbroken current of authority is all in one direction, in requiring either express words or, in their absence, an unmistakable intention to embrace after-acquired property.

Our researches have discovered but one case where words similar to those in the Pou mortgage were held not to cover an after-acquired grant of lands, but we think the decision, which is extremely voluminous, as it covers many points, is evidently based upon the fact that the lands were granted on certain terms

or trusts, the object of which would be defeated if the property granted could be subjected to the mortgage lien. *Meyer v. Johnson,* 53 Ala., 323, and same case, 64 Ala., 606. The consensus of authority leads us to conclude that the terms employed in the Pou mortgage are sufficient to embrace the after-acquired lands and personal property of the mortgagor.

2. The words used being sufficient, we will next consider the validity of such a mortgage.

It is well understood that at common law nothing can be mortgaged that is not in existence and does not at the time belong to the mortgagor, for a person cannot convey that which he does not own; but it is now well settled that equity will give effect to a contract to convey future-acquired property, whether real or personal. Equity considers that done which the mortgagor has agreed to do, and treats the mortgage as already attaching to the newly acquired property as it comes into the mortgagor's hands. "It is settled that such a clause is valid," says *Mr. Justice Brewer,* in *Trust Co. v. Kneeland,* 138 U. S., 419. "A clause in a mortgage which subjects subsequently acquired property to the lien of the mortgage is a valid clause," says *Mr. Justice Peckham,* in *Bear Lake Co. v. Garland,* 164 U. S., 15. *Galveston v. Cowdy,* 11 Wallace, 459; 1 Jones on Mortgages, sec. 153; Pingrey on Mortgages, sec. 453; *Brown v. Dail,* 117 N. C., 41; *Perry v. White,* 111 N. C., 197; *Cooper v. Rouse,* 130 N. C., 202.

The learned counsel for the appellant contend that "The mortgage to Pou is not upon a railroad, and the peculiar rules applicable to railroad mortgages cannot apply. The fact that a logging road is treated as a railroad for some purposes does not convert a sawmill into a railroad. The use of the words cannot change the essential nature of things." Although it appears that the mortgagor, while doing principally a lumber business, owned and operated a railroad twenty miles long, a part of the mortgaged property, we are not treating it, in the consideration of this case, as strictly a railroad corporation, within the common acceptation of that term.

This principle of equity jurisprudence, as enforced by the

courts, is not confined in its application to railroad corporations, as is manifest from an examination of the text writers and the cases cited from our own and other courts.

One of the oldest as well as a leading case on the subject is *Mitchell v. Winslow*, 2 Story, 630; Fed. Cases, No. 9673: There a partnership, engaged in the manufacture of cutlery, executed a mortgage of all the machinery in and belonging to the cutlery manufactory in Westbrook, with all the tools of every kind thereunto belonging, together with all the tools and machinery for the use of the said manufactory which they might at any time purchase for four years from the date of the mortgage, and also all the stock which they might manufacture or purchase during said four years. In his opinion the eminent *Judge Story* said: "It seems to me a clear result of all the authorities that whenever the parties, by their contract, intend to create a positive lien or charge, either upon real or personal property, whether then owned by the assignor or contractor, or not, or, if personal property, whether it is then *in esse* or not, it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires a title thereto."

In *Holroyd v. Marshall*, 10 H. L. Cases, 191, it was held that "If a mortgagor mortgage property, real or personal, of which he is not possessed at the time, and he receives the consideration for the contract, and afterwards becomes possessed of the property answering the description in the contract, there is no doubt that a court of equity would compel him to perform the contract, and that the contract would, in equity, transfer the beneficial interest to the mortgagees immediately on the property being acquired."

Neither of those decisions relate to railway corporations. The case of *Maxwell v. Dental Co.*, 77 Fed. Rep., 938, is a well-considered case, touching the after-acquired property clause in a mortgage in no way connected with a railroad corporation.

3. Having determined that the Pou mortgage is a valid lien upon the after-acquired property of the mortgagor, we will next consider if there is any principle of equity which forbids its enforcement against the appellants. The courts will not enforce the after-acquired property clause in a mortgage against anyone who can set up an equity of equal dignity in his own behalf,

for where equities are equal the law will prevail. Therefore the clause will not be enforced against subsequent purchasers for value and without notice. *Holroyd v. Marshall, supra; in re Clark.*

The appellant cannot avail itself of that protection, as the Pou mortgage was recorded in apt time. In North Carolina a mortgage upon after-acquired property, being enforcible *inter partes,* becomes, upon registration, valid and enforcible against subsequent purchasers, because the registration is an effectual notice as against the world. Hence, the Hickson Lumber Company advanced their money, with which to buy new timber lands, with a knowledge of the Pou mortgage and with notice of Pou's equities. The fact that the appellant loaned money to the mortgagor to buy the lands which the mortgagor purchased from others will not raise an equity to defeat the Pou mortgage, of which appellant had notice. *Coe v. Railroad,* 10 Ohio St., 372; *Galveston v. Cowdy,* 78 U. S., 459; *Bank v. Dowd,* 52 L. R. A., 481; *Locomotive Works v. Truesdale,* 9 L. R. A., 140.

It is undoubtedly true that if the appellant had a lien on these lands at the date they were acquired by the Gay Lumber Company, which it could enforce against that corporation, it could enforce it against Pou, for the after-acquired property clause only attaches to such interest as the mortgagor acquires; and it would be immaterial whether Pou had notice of such lien or not. Jones on Mortgages, sec. 158. But the appellant had no lien when the Gay company acquired the lands by deed. It never had any lien until its mortgage was subsequently executed, and that is secondary to the Pou mortgage.

The money advanced to purchase the lands cannot well be classified as "purchase money," for the purchase money was paid to the vendors at the time they executed their deeds to the Gay Lumber Company. It was simply money borrowed with which to pay for the lands, and until the execution of the mortgage by the Gay company to appellant it was only a simple contract debt, with nothing to secure it.

But assuming that the money advanced constituted "the purchase money," in the strict sense of those words, that would give appellants no lien on the lands. Ever since the leading case of *Womble v. Battle,* 38 N. C., 182, decided in 1844, it has been

settled in this State that a vendor of real estate who has conveyed it by deed has no lien upon the land for the purchase money, and that the English doctrine of a purchase-money lien does not obtain here. We therefore conclude that, assuming the facts to be as claimed, they establish no equity in appellant which is paramount to the Pou mortgage.

Let the costs of this appeal be paid by the Hickson Lumber Company. The judgment of the Superior Court is

Affirmed.